Elizabeth L. M. Barbour v. Commissioner.
Barbour v. Commissioner
Docket No. 319.
United States Tax Court
1944 Tax Ct. Memo LEXIS 337; 3 T.C.M. (CCH) 216; T.C.M. (RIA) 44073; March 3, 1944
*337 William E. Matthews, Esq., 60 Wall St., New York, N. Y., for the petitioner. Scott A. Dahlquist, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1939 of $664.87. The petition alleges as follows: 4. The determination of tax set forth in said notice of deficiency is based upon the following errors: (a) Respondent has erroneously determined that petitioner was not engaged in trade or business in the United States in the year 1939. (b) Respondent has erroneously determined that petitioner is subject to tax on gross income from sources within the United States as a non-resident alien not engaged in trade or business within the United States and not having an office or place of business therein. (c) Respondent has erroneously denied petitioner's claim for refund of $80.05 representing excessive United States income tax withheld at the source. (d) Respondent has erroneously disallowed deductions claimed in the 1939 income tax return filed by petitioner as follows: Depreciation on real property situated
in the United States and owned and
operated by petitioner
$ 502.28
Taxes paid on real property situated
in the United States and owned and
operated by petitioner
511.74
Other expenses paid by petitioner in
connection with the operation of real
property situated in the United
States
742.16
Long term capital loss on the sale of
mortgages on real property situated
in the United States
1,400.00
Commissions paid to petitioner's agents
in the United States
173.00
*338 (e) Respondent has erroneously disallowed the personal exemption of $1,000 and the earned income credit of $300 claimed in the 1939 income tax return filed by petitioner. The facts are shown by the pleadings and by a stipulation of facts signed by both parties. [The Facts] The petitioner is a nonresident alien, a subject of Great Britain and an actual resident of Ireland. Her income tax return for 1939, on form 1040 (b), was filed in petitioner's behalf with the collector of internal revenue at Newark, N.J., under powers of attorney held by Lewis Spencer Morris and Charles S. McVeigh, attorneys of the City of New York. Upon termination thereof petitioner as beneficiary and remainderman, respectively, of two trusts created under the will of her mother, Eliza Barbour, and as remainderman of a trust created under the will of her grandmother, Sara Rebecca Barbour, acquired trust assets consisting of corporate stocks, corporate and municipal bonds, a number of bonds of individuals secured by mortgages on real property, and an undivided one-third interest in a parcel of real property situated at 1 Auburn St., Paterson, N.J. All of the assets thus acquired were situated within *339 the United States as of the date of acquisition. As of October 30, 1937, the market value of the assets thus acquired was approximately $250,000. On January 1, 1939, and thereafter throughout 1939, petitioner was the owner of the specific parcels of real property described below: "(a) 73-75 Auburn St., Paterson, N.J., is a frame building consisting of two adjoining onefamily dwellings. It contains sixteen rooms, two baths and has separate heating plants. During the year 1939 it was used by the lessee as a furnished room dwelling. "(b) 62 James St., Westwood, N.J., is a sixroom one-family frame dwelling with a two-car garage. "(c) An undivided one-third interest in 1 Auburn St., Paterson, N.J. The building on this property is a two-family dwelling and contains eleven rooms and two baths. "(d) 712 Fourteenth Ave., Paterson, N.J., is a one-family frame dwelling containing nine rooms which petitioner acquired through foreclosure of a mortgage which she held on the property. A contract for the sale of this property was entered into in 1938 under which the purchaser deposited $500 on account of the purchase price and assumed payment of all back taxes and other arrears on the premises." *340 Shortly after acquiring the assets distributed to her on termination of two of the trusts described above, the petitioner created a revocable trust under which Paterson National Bank, Paterson, N.J., acted as trustee. All of the properties acquired by petitioner from her mother and grandmother were transferred to this trust. During the period from the creation of this trust on February 10, 1932, to February 8, 1938, all of said properties were managed by said bank as trustee and the income remitted periodically to the petitioner. On February 8, 1938, petitioner revoked this trust and directed the trustees to transfer the trust assets to an account on the books of the bank in the name of Morris & McVeigh, 60 Wall St., New York, N. Y., attorneys for the petitioner. At all times subsequent to February 8, 1938, all of petitioner's real and personal property situated in the United States has been managed by Messrs. Morris and McVeigh, practicing attorneys of New York City, under powers of attorney. Among their activities in connection with their management of petitioner's real properties in the United States, said firm, since February 8, 1938, has collected the rents thereof, arranged *341 for leases of the premises, supervised the painting and repair of the buildings situated thereon, inspected said real property from time to time, supervised the various alterations requested by tenants and which were required to keep the properties rented, and arranged for insurance on the properties. In connection with their management of petitioner's personal property in the United States they have, since February 8, 1938, collected all income therefrom and directed all sales of petitioner's stocks, bonds and mortgages. During the year 1938, a large portion of petitioner's properties were either sold or transferred to petitioner in Ireland. Prior to the year 1940, the net income and the proceeds of the sale of petitioner's properties, after setting up the necessary reserves for income and other taxes and expenses were either remitted to petitioner or reinvested for her account. In accordance with British treasury regulations all proceeds of sales made after April 5, 1940, as well as income collected thereafter, have been remitted to the British treasury. Said firm prepared petitioner's income tax returns and from time to time advised her on such legal matters that have been brought *342 to its attention by petitioner or her solicitors in Ireland. In July, 1939, petitioner visited the United States and traveled extensively therein for seven months. During her stay in the United States she consulted with her attorney, Charles S. McVeigh, on a number of occasions in connection with the management of her affairs. The petitioner's income tax return for 1939 showed a total net income from sources within the United States of $10,265.60. Upon audit of the return the respondent found unallowable deductions and additional income as follows: (a) Deduction in re: rental property
$1,756.18
(b) Long-term capital loss
1,400.00
(c) Commissions
173.00
Total
$3,329.18 and determined an adjusted gross income of $13,594.78 which the respondent also held was the income upon which the petitioner as a nonresident alien was taxable. The deduction under (a), above, $1,756.18, is composed of: Depreciation
$ 502.28
Taxes
511.74
Insurance, repairs, etc.
742.16
Total
$1,756.18
The single issue involved in this case is whether the taxpayer, a nonresident alien, is subject to tax under the provisions of Section 211 (a) of the Internal Revenue Code upon income received *343 from sources within the United States, as determined by the Commissioner, or whether the taxpayer is subject to tax under the provisions of Section 211 (b) of the Internal Revenue Code, as claimed by her. Section 211 I.R.C., so far as material, provides as follows: SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS. (a) No United States Business or Office. - (1) GENERAL RULE. - (A) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by *344 treaty with such country. * * * * *
(b) United States Business or Office. - A nonresident alien individual engaged in trade or business in the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a). As used in this section, section 119, section 143, section 144, and section 231, the phrase "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such services does not exceed in the aggregate $3,000. Such phrase does not include the effecting of transactions in the United States in stocks, securities, or commodities through a resident broker, commission agent or custodian. The petitioner contends that she was a nonresident *345 alien "engaged in trade or business in the United States" within the meaning of section 211 (b), Internal Revenue Code, and in support of such contention relies upon Pinchot, Executor v. Commissioner ( C.C.A., 2nd Cir.), 113 Fed. (2d) 718. The question involved in that case was whether a nonresident alien was engaged in a trade or business in the United States within the meaning of the estate tax law. The court held, affirming the Board of Tax Appeals, that she was. The evidence showed that the estate owned a large amount of real estate in the City of New York and that the estate's agents employed one or more persons to make repairs upon the real estate and that they were actively engaged in the management of the property. It is the respondent's contention herein that the activities of the petitioner's attorneys in this country were not of sufficient magnitude to qualify her as carrying on a trade or business within the United States. The rentals received by the petitioner from her real estate located in this country in 1939 were $1,729.55. The depreciation and other deductions chargeable against that property were $1,756.18. Her return therefore shows *346 an excess of deductions over the rentals received of $26.63. There is no evidence in this case that the petitioner devoted any time during 1939 to the management of her real estate in this country. Certain payments were made by her attorneys for the account of the real estate. The question arises as to whether a nonresident alien individual who owns a parcel of real estate in this country from which he receives rents may be regarded as carrying on a trade or business in the United States within the meaning of section 211 (b), Internal Revenue Code. We think that in a case where the rental of the real estate is merely incidental to the collection of dividends and interest on bonds it can not truthfully be said that the taxpayer, a nonresident alien individual, is carrying on a trade or business in the United States. Each case must be decided upon its own facts. We are of the opinion that the activities of the petitioner and her agents with respect to the management of her real estate in this country in 1939 did not constitute the carrying on of a trade or business. Decision will be entered for the respondent.